UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW M. DENNIS,<br><br>       Plaintiff,<br><br>  v.<br><br>GENE DOSER, et al.,<br><br>       Defendants. | Case No.  1:22-cv-00818-HBK (PC)<br><br>ORDER TO ASSIGN A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS TO PERMIT PLAINTIFF TO PROCEED ON COGNIZABLE CLAIMS AND DISMISS REMAINING CLAIMS AND DEFENDANTS[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No.  1, 15) |

Plaintiff Matthew Dennis is a former state prisoner proceeding pro se and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  Plaintiff proceeds on his initial Complaint.  (Doc. No. 1, "Complaint").  As more fully set forth below, the undersigned finds the Complaint states a cognizable Eighth Amendment excessive force claim against Defendants Doser, Dinnis, and Swanson, but no other claims.  Therefore, the undersigned recommends that Plaintiff be allowed to proceed only on the excessive force claim against Defendants Doser, Dinnis, and Swanson and the remaining claims and defendants be dismissed without prejudice.

////
////
////

---

[1] The undersigned submits these factual findings and recommendations to the District Court pursuant to 28 U.S.C. §636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

**BACKGROUND AND SUMMARY OF OPERATIVE PLEADING**

**A. Procedural History**

Plaintiff initiated this action by filing a Complaint under 42 U.S.C. § 1983.  (Doc. No. 1). On February 21, 2023 the undersigned screened the Complaint and found it stated a cognizable Eighth Amendment excessive force claim against Defendants Doser, Dinnis, and Swanson, but no other claims.  (Doc. No. 14 at 1).  The Court directed Plaintiff to file an amended complaint, file a notice to voluntarily dismiss the Defendants and other claims deemed not cognizable, or stand on his Complaint subject to the undersigned issuing findings and recommendations to dismiss the Defendants and other claims deemed not cognizable.  (*Id*. at 10-12).  On March 9, 2023 Plaintiff filed a notice that he "agrees with this Court's screening order finding Doser, Dinnis, and Swanson cognizable for viciously beating me."  (Doc. No. 15 at 1).  However, "as to dismissing other defendants [Plaintiff] only disagree[s] to the dismissal of Warden Pfeiffer."  (*Id*. at 2). Plaintiff argues that Warden Pfeiffer should remain as a Defendant because, echoing an argument Plaintiff presented in his Complaint, Warden Pfeiffer "should have or was more than aware of Doser and Swanson's abusive behavior towards prisoners."  (*Id*.).  Plaintiff believes that support for this assertion will emerge through discovery.  (*Id*. at 3).  Although Plaintiff does not appear to object to the dismissal of any of the other claims deemed not cognizable nor as to any of the other Defendants, other than Warden Pfeiffer, in an abundance of caution the undersigned addresses each of these other Defendants and claims.

**B. Summary of Operative Pleading**

The Complaint names the following Defendants: Gene Doser, Sergeant; FNU Dinnis, Correctional Officer; FNU Swanson, Correctional Officer; FNU Espinosa, Sergeant at Kern Valley State Prison ("KVSP"); C. Pfeiffer, Warden of KVSP; Mrs. Miranda, Correctional Counselor at California Substance Abuse Treatment Facility ("CSATF"); Mr. De La Cruz, Correctional Counselor at CSATF; and Kathleen Allison, the Secretary of the California Department of Corrections and Rehabilitation ("CDCR").  (Doc. No. 1 at 1-2).  The Complaint lists 14 different claims for relief including excessive use of force, retaliation, interference with access to the courts, and deprivation of property.  (*Id*. at 1-22).

In summary, Plaintiff was housed at CSATF but was later transferred to KVSP, which he claims was done in retaliation for filing a lawsuit against CDCR. (*Id.* at 12-15). Plaintiff arrived at KVSP sometime before July 13, 2021 and realized that not all of his property was transferred with him. (*Id.* at 3-9). As a result, Plaintiff "refused to enter his cell." (*Id.* at 4). In response, Defendants Doser, Dinnis and Swanson attacked and beat him. (*Id.* at 3-4). Plaintiff believes Defendants contrived the incident to retaliate against him for filing a prior lawsuit. (*Id.* at 3). He brings a variety of claims against Defendants related to this incident under the First, Eighth, and Fourteenth Amendments.

In Claim 1, Plaintiff states he was "peacefully protesting" the theft of his property by refusing to enter his cell on July 13, 2021, when Defendant Sergeant Doser attacked him by kicking, stomping, and punching him. (*Id.* at 3). Other Defendants, who Plaintiff identifies as "subordinate officers," were involved in the attack, including Defendant Dinnis and Defendant Swanson who "punched, kneed, and kicked [his] body, left leg, and . . . face for almost two minutes." (*Id.* at 3, 6). Claims 4 and 5 stem from the same use of force incident but focus on wrongdoing by Defendants Dinnis and Swanson. (*Id.* at 6-7).

In Claim 2, Plaintiff states Defendant Doser committed the July 13, 2021 use of force in retaliation for Plaintiff filing a lawsuit against "CDCR Medical." (*Id.* at 4). Plaintiff states that "within an hour" of learning Plaintiff was suing "CCHSC," Defendant Doser "created a situation where he deliberately stole my most valuable property" to provoke Plaintiff so that he could physically attack him. (*Id.*). "Instead of responding in a threatening manor [sic]" Plaintiff turned his back to Doser, interlocked his fingers behind his head, and stated, "I am not resisting but I cannot go into that cell without my property. (*Id.*). Doser responded, "your [sic] going into that cell" and then "attacked" Plaintiff from behind. (*Id.*). Defendants Dinnis and Swanson were present and took part in the use of force, but Plaintiff admits he has no reason to believe they did so in retaliation for his lawsuit against CCHCS. (*Id.* at 6-7).

In Claim 3, Plaintiff alleges a Fourteenth Amendment claim under the Due Process Clause related to one box of his property going missing during his transfer from CSATF. (*Id.* at 5).

Claims 6 and 7 name Defendant Sergeant Espinosa and allege violations of the Fourteenth

3

and First Amendments stemming from Plaintiff's missing property. (*Id.* at 8-9). Claim 6, styled as a deprivation of property claim, states that on July 14, 2021, the day after the use of force incident, Espinosa confronted Plaintiff about emails he sent to his aunt regarding the attack outside his cell, which led her to call the Delano Police Department and the watch commander at KVSP. (*Id*. at 8). Espinosa demanded that Plaintiff drop his claims of excessive force and said that in exchange he would receive his lost property. (*Id*.). After Plaintiff refused, Espinosa told Plaintiff if he did not "recant," Espinosa would "smash [his] TV and say it was altered so [he] could not replace it." (*Id.*). Plaintiff was then forced to sign a CDCR Inventory Sheet verifying he received all his property when in fact he did not. (*Id.*). Plaintiff lost property worth $610.54. (*Id.*). Claim 7 largely repeats the facts of Claim 6 but is styled as a First Amendment retaliation claim.

Claims 8, 9, and 10 involve the Warden at KVSP, C. Pfeiffer. (*Id.* at 10-23). In Claim 8, Plaintiff asserts that Defendant Pfeiffer exhibited deliberate indifference to Plaintiff's safety by allowing Defendant Doser to continue serving as a correctional officer at KVSP, even though prior prisoner civil rights cases against Defendant Doser accuse him of murder, assault, theft, and falsification of administrative paperwork at different CDCR facilities including CCI, Tehachapi, Delano, Corcoran, CSATF and KVSP. (*Id.*). Claim 9 largely repeats the same facts as Claim 8, but alleges a First Amendment retaliation claim. (*Id.* at 11). Claim 10 states that Pfeiffer violated Plaintiff's Fourteenth Amendment right "to access the Court and due process of discovery." (*Id.* at 12). In support, Plaintiff states that while at KVSP he was kept from accessing the prison library, thereby impeding his ability to litigate *Matthew Dennis v. Scott Kerman*, 2:16-cv-00542-JAM-AC. (*Id.*). Plaintiff also says that he was "illegally transferred" to a "180 design maximum security" prison due to his ongoing § 1983 action. (*Id.*).

Claims 11 and 12 involve Defendant Miranda, whom Plaintiff identifies as a correctional counselor at CSATF. (*Id.* at 13-14). Plaintiff claims he had a civil rights action identifying a doctor from CSATF as a Defendant and that two days after e-service of the defendant in that case he was placed in "the hole, Administrative Segregation" without a rules violation report ("RVR"). (*Id.*). Although not the model of clarity, Plaintiff states that an RVR was issued and then

dropped, but he was already set to transfer to KVSP, which he says is a higher security institution. (*Id.*). Plaintiff takes issue with the transfer to KVSP, which he says violated an inmate placement rule. (*Id.*). He also says that Defendant Miranda's "refus[al] to restore all [Plaintiff's] privileges and give him [his] owed behavioral override" constituted deliberate indifference that led to the subsequent incidents at KVSP, including the theft of his property and the July 13, 2021 assault. (*Id.*). In Claim 12, Plaintiff faults Defendant Miranda for not "correct[ing] the record[,]" as it pertained to the RVR, and effectuating a restoration of his rights and privileges. (*Id.* at 14).

Claim 13 involves Defendant De La Cruz, who is identified as a correctional officer at CSATF. (*Id.* at 15). Plaintiff alleges that De La Cruz violated his First Amendment rights because while Plaintiff was in "the hole" and no RVR had yet been issued, De La Cruz threatened him with "retaliation/transfer" for having filed suit against Dr. Phui, "a CSATF colleague" who "was their buddy." (*Id.*).

Claim 14 alleges an Eighth Amendment violation against Kathleen Allison, Secretary of CDCR, because she is responsible for Defendant Doser "still having a job and abusing prisoners." (*Id.* at 16).

The injuries Plaintiff asserts for Claims 1, 2, 3, 5, 8, and 11 through 14 are the physical and mental injuries he sustained from the July 13, 2021 use of force at KVSP. Plaintiff therefore blames Defendants at CSATF for his transfer to KVSP and the subsequent injuries he sustained from the July 13, 2021 use of force at KVSP. Other injuries Plaintiff sets forth in Claims 3 and 6 involve his lost property totaling $610.54. And in Claim 10, Plaintiff alleges that discovery in his other civil rights action was impeded.

**C. Relief Requested**

As a remedy, Plaintiff seeks declaratory relief, punitive damages, compensatory damages, nominal damages, and for Defendant Doser "to be addressed professionally." (*Id.* at 20).

**ANALYSIS AND APPLICABLE LAW**

**A. Screening Requirement and Rule 8**

Plaintiff commenced this action while in prison and is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, that the court screen any complaint that seeks

relief against a governmental entity, its officers, or its employees before directing service upon any defendant. 28 U.S.C. § 1915A. This requires the Court to identify any cognizable claims and dismiss the complaint, or any portion, which is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the Court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that the complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening. This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading could be cured by the allegation of other facts, the pro se litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, it is not the role of the Court to advise a pro se

litigant on how to cure the defects. Such advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13.

**B.  Related Claims and Joinder**

The Rules permit a complaint to include all *related claims* against a party and permit joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of transactions or occurrences" where "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added). But the Rules do not permit conglomeration of unrelated claims against unrelated defendants in a single lawsuit. Unrelated claims must be filed in separate lawsuits.

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

*K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013), *aff'd sub nom, K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791 (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Here, the Complaint lists 14 claims for relief stemming from several seemingly different and unrelated events at two different prisons. The mere fact that all the claims in Plaintiff's Complaint arise from incidents that took place in prison does not establish that they arise from the "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 18(a).

Although Plaintiff tries to link the various incidents described in his Complaint, including his transfer from CSATF to KVSP, the loss of his property, the July 13, 2021 use of force incident, and his restricted access to the KVSP law library, these various claims lack "factual

similarity in the allegations supporting" them. *See Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013); *see also In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (finding claims misjoined when there is no "logical relationship" connecting them). As set forth more fully below, the undersigned finds that Plaintiff states a cognizable Eighth Amendment excessive force claim against Defendants Doser, Dinnis, and Swanson. However, the claims related to Plaintiff's incarceration at CSATF (Claims 3, 11, 12 and 13) involved a completely different set of Defendants than those involved in the use of force incident at KVSP. Plaintiff was advised in the February 21, 2023 screening order that he could not include the events from both CSATF and KVSP in this action but nevertheless Plaintiff elected to stand on his Complaint rather than remedy this deficiency. (*See* Doc. No. 15). Further, Claim 10, regarding Plaintiff's restricted access to the KVSP law library, bears no factual or logical connection to any of the other claims in the Complaint and is likewise misjoined.

**C. Supervisory Liability**

Liability under section 1983 arises only upon a showing of personal participation by the defendant. "There is no respondeat superior liability under section 1983." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them. *Id.*, *see also Starr v. Baca,* 652 F.3d 1202, 1206–07 (9th Cir. 2011); *see also Anderson v. Hansen*, 2013 WL 4676212 at *3 (E.D. Cal. Aug. 30, 2013) ("[a] prison official may be held liable for failing to protect an inmate from a prison guard if he knew of an excessive risk to inmate health or safety posed by the . . . prison guard and disregarded that risk"). However, allegations that "rely upon claims of the general responsibility of the warden for prison operations that are insufficient to establish Section 1983 liability." *Brown v. Perez*, 2016 WL 7975264 at *6 (C.D. Cal. Dec. 16, 2016). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland,* 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted).

### 1. Warden Pfeiffer

Liberally construed, Plaintiff asserts that Warden Pfeiffer is liable for permitting Defendant Doser to continue working at KVSP despite being the subject of prior prisoner civil rights lawsuits for a variety of alleged misconduct. This fact alone is insufficient to establish that Warden Pfeiffer was deliberately indifferent to a serious risk to Plaintiff's safety. First, Plaintiff cannot impute knowledge of Defendant Doser's misconduct to Warden Pfeiffer by the mere fact that Doser was the subject of multiple lawsuits; Plaintiff asserts that "it is [Pfeiffer's] duty to know or should know about his Correctional Staffs [sic] employee history." (Doc. No. 1 at 10). Even assuming arguendo that Defendant Pfeiffer was aware of the lawsuits, mere accusations of wrongdoing in a lawsuit are not proof of misconduct. Plaintiff's allegations "rely upon claims of the general responsibility of the warden for prison operations," which is insufficient to establish liability under section 1983. *Brown*, 2016 WL 7975264 at *6. Without facts alleging that Warden Pfeiffer actually knew of, and acquiesced in constitutional deprivations committed by Defendant Doser, the Complaint fails to state an Eighth Amendment deliberate indifference claim against Pfeiffer.

Plaintiff also asserts a retaliation claim against Pfeiffer but does not describe any specific actions that support his claim. He merely reiterates that Pfeiffer was responsible for preventing abuses by his staff and that his failure to do so caused Plaintiff harm. (*See* Doc. No. 1 at 11). This does not establish the requisite allegations sufficient to sustain a retaliation claim, i.e. that Pfeiffer engaged in adverse action in response to Plaintiff's protected First Amendment conduct and that the adverse action lacked any legitimate penological objective. Because the Complaint is devoid of such factual allegations, Plaintiff fails to state a retaliation claim against Defendant Pfeiffer.

### 2. Secretary Allison

Liberally construed, Plaintiff also asserts an Eighth Amendment claim against former CDCR Secretary Kathleen Allison. As with Warden Pfeiffer, however, Plaintiff fails to set forth facts showing Secretary Allison's personal participation in any wrongdoing or actual knowledge and acquiescence in such wrongdoing. Thus, Plaintiff also fails to state a claim against Allison.

### D. Retaliation and Loss of Property

The Complaint alleges additional retaliation claims against Defendants Doser, Espinosa, Miranda, and De la Cruz. Plaintiff refers to his filing of an earlier civil rights action as the alleged impetus for his placement in administrative segregation at Corcoran, his transfer to KVSP, the loss of one box of property during the transfer, and the subsequent July 13, 2021 use of force incident at KVSP.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

1. Defendant Doser

Plaintiff asserts that "within an hour" of him filing a lawsuit against CCHCS Defendant Doser took his property in order to provoke a confrontation that would justify him physically attacking Plaintiff. (Doc. No. 1 at 4). Plaintiff's claim, however, relies on conclusory assertions that are unsupported by facts. Plaintiff does not provide any detail as to the lawsuit against CCHCS, such as a case number or a description of what exactly occurred on July 13, 2021 that purportedly provoked Defendant Doser's actions that day.

Plaintiff is required to document in his Complaint any prior prisoner civil rights cases, and references only one, *Dennis v. Kernan*, E.D. Cal. Case No. 2:21-cv-542-JAM-AC. (*Id*. at 2). The Court takes judicial notice of the fact that in *Dennis v. Kernan*, which remains pending, Plaintiff brought suit against various CDCR officials including CCHCS staff.[2] (*See* Doc. No. 1, Case No.

---

[2] Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction," or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take judicial notice on its own or at the request of any party. *Id.* 201(c). Courts judicially notice other court proceedings "if those proceedings have a direct relation to the matters at issue." *United States ex. Rel. Robinson Rancheria Citizens Counsel v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citations and internal quotation marks omitted); *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011). However, a court may not take judicial notice of findings of facts from another case. *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006).

2:21-cv-542-JAM-AC). However, the case was filed on March 14, 2016, not July 13, 2021. Nor are there any facts to substantiate Plaintiff's claim that Defendant Doser learned of the purported filing within an hour of it occurring; while the Court takes Plaintiff's factual allegations as true at the screening stage, it is not required to accept conclusory assertions or indulge unwarranted inferences. *Western Mining Council*, 643 F.2d at 624. Because the Complaint is devoid of facts alleging that Defendant Doser's adverse actions were motivated by Plaintiff's protected First Amendment conduct, the Complaint fails to state a retaliation claim.

### 2. Defendant Espinosa

Plaintiff alleges that after he reported the July 13, 2021 use of force incident to his aunt, she called the Delano Police Department and the KVSP Watch Commander. (Doc. No. 1 at 8). Defendant Espinosa approached Plaintiff and asked if he would recant his "staff complaint" in exchange for the return of all of this property. (Doc. No. 1 at 9). When Plaintiff asked what Espinosa meant by "staff complaint" he said "your emails." (*Id*.). After Plaintiff refused, Espinosa then said he would smash Plaintiff's TV and say it was altered so that he could not replace it. (*Id*.).

Plaintiff cannot state a retaliation claim because the threats by. Espinosa were not related to protected first amendment conduct. While Espinosa referred to Plaintiff's emails as a "staff complaint" Plaintiff does not allege he had filed a grievance at that point or sought any other administrative relief or remedies from the courts. Nor does Plaintiff assert facts alleging that Espinosa's actions discouraged him from doing so. Accordingly, he does not meet an essential element of a retaliation claim. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (To prevail on a retaliation claim, a plaintiff must show that his protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct.")

### 3. Defendant Miranda

Plaintiff asserts that on some unspecified date Defendant Miranda, a correctional counselor at SATF, "refused" to restore his privileges and provide him his "owed behavioral override." (Doc. No. 1 at 13). He implies that Defendant Miranda's actions or inactions were motivated by Plaintiff's filing of a lawsuit against a SATF doctor (which, as noted above, took

place in 2016), but fails to allege any facts plausibly connecting these events. While he asserts that he was placed in administrative segregation two days after the doctor received E-Service of the complaint in that case on April 9, 2020, Plaintiff acknowledges that Defendant Miranda's actions took place several months later and were not close in time to any event involving the lawsuit. (*See id.*). Thus, Plaintiff fails to state a cognizable retaliation claim against Defendant Miranda.

### 4. Defendant De la Cruz

Plaintiff states in Claim 13 that "when I was in the hole [Correctional Counselor De la Cruz] threatened me with retaliation/transfer." (Doc. No. 1 at 15). Beyond this conclusory statement, however, Plaintiff does not assert any facts to support a retaliation claim. He states that he "had a very heated candid conversation through the cell door that the real reason [he was in ad-seg] was because [he] sued CDCR medical and Dr. Phui was their buddy." (*Id.*). The mere fact that Plaintiff had a "conversation" regarding his belief that he was retaliated against does not establish facts that Defendant De la Cruz actually engaged in retaliation, either in placing him in administrative segregation or in ordering his transfer to KVSP. Without more than Plaintiff's speculation, he fails to stage a retaliation claim against De la Cruz. *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("mere speculation that defendants acted out of retaliation is not sufficient").

**E. Transfer**

Plaintiff blames Defendant Miranda for his transfer from Corcoran to KVSP and refers to the security levels of the institutions to imply that he was improperly placed in a maximum security facility. (Doc. No. 1 at 13). *Wolff v. McDonnell*, 418 U.S. 539 (1974) makes clear that "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff*, 418 U.S. at 556. The Ninth Circuit has held prisons enjoy discretion to house inmates in higher security units to "preserve order in the prison and protect the safety of all inmates" even if the inmates being housed there are not accused of misdeeds. *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003).

Thus, it appears the decision to transfer Plaintiff was properly within the discretion of prison officials and falls squarely within the discretion provided for by *Bruce*. *See also Ingraham*, 430 U.S. 651, 672 (1977) ("[d]ue process is required only when a decision of the State implicates an interest within the protection of the Fourteenth Amendment."). California prisoners do not have a "protected liberty interest" in being housed in a specific prison unit. *Windham v. California Dep't of Corr.*, 385 F. App'x 657, 658 (9th Cir. 2010). Plaintiff has not shown that his incarceration at KVSP, rather than Corcoran, "imposed atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, as Plaintiff's transfer to a different CDCR facility does not implicate a protected liberty interest, the Complaint fails to state a cognizable claim related to his transfer.

### F. Excessive Use of Force

Inmates who sue prison officials for injuries sustained while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause, or, if the claim is pursued by a pre-trial detainee who is not convicted, under the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520 (1979) (holding that under the Due Process Clause, a pre-trial detainee may not be punished prior to conviction). The Eighth Amendment protects inmates from inhumane methods of punishment and conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." *Farmer*, 511 U.S. at 832.. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). When determining whether the force was excessive, the Court looks to the "extent of injury suffered by an inmate . . . the need for application of force, the relationship between that need and the amount of force used, the threat

'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9.

Here, the Complaint contains sufficient facts to state a cognizable excessive use of force claim against Defendants Doser, Swanson, and Dinnis arising from the July 13, 2021 use of force incident at KVSP.  As set forth in Claims 1, 4, and 5, and accepting the facts as true as the Court must do at this stage of the proceedings, Plaintiff refused to enter his cell when he saw he was missing property but presented no threat of physical harm to Defendants Doser, Dinnis, and Swanson.  In response, these three correctional officers kicked, punched, and stomped on Plaintiff for more than 2 minutes.  Plaintiff suffered injuries from the attack.  Accordingly, the Complaint states a cognizable Eight Amendment excessive use of force claim.

Accordingly, it is **ORDERED**:

The Clerk of Court is directed to assign a district judge to this case.

Further, it is **RECOMMENDED**:

1. This action proceed only on Plaintiff's Eighth Amendment excessive force claim against Defendants Gene Doser, FNU Dinnis, and FNU Swanson.

2. All other claims and Defendants be dismissed from this action based on Plaintiff's misjoinder of claims and failure to state claims upon which relief may be granted.

////

NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the

specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:     June 26, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE